**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ARIEL TORRES and RAPHYR LUBIN,
individually and on behalf of all others
similarly-situated,

    Plaintiffs,
v.                                                                                  CASE NO.:   8:20-cv-1311-T-36TGW

STARBUCKS CORPORATION,

    Defendant.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S SECOND MOTION**
**TO  COMPEL ARBITRATION AND DISMISS THE ACTION**

Named Plaintiffs, Ariel Torres and Raphyr Lubin, file this response to Defendant Starbucks' Second Motion to Compel Arbitration.  (Doc. 18).  The first Named Plaintiff, Ariel Torres, consents to arbitration of his COBRA claims.  The second Named Plaintiff, Raphyr Lubin, opposes the Motion.  In further support thereof Plaintiffs state as follows:

*Summary of Response*

Named Plaintiff Raphyr Lubin never agreed to arbitrate his COBRA claims against Starbucks.  In fact, he is not party to the arbitration agreement Starbucks is attempting to invoke against him.  Rather, the agreement is actually between Starbucks and his wife (a former Starbucks employee).  As attested to in Plaintiff Lubin's attached declaration, he never saw the Starbucks' arbitration agreement, never signed it, and certainly never agreed to it.  (Lubin Decl., ¶¶ 3, 4). Starbucks' Motion presents not a modicum of evidence suggesting otherwise.  Under binding Florida contract law, which governs here, "[o]ne who has not agreed to be bound by an arbitration agreement cannot be compelled to arbitrate." *Liberty Commc'ns, Inc. v. MCI Telecommunications Corp.*, 733 So. 2d 571, 573 (Fla. 5th DCA 1999).  Because Plaintiff Lubin never agreed to be bound

1

by the Starbucks arbitration agreement, he cannot be compelled to arbitration. Starbucks' equally-strained equitable-estoppel and third-party beneficiary arguments fail for the same reasons, and some others provided below. For these reasons, Plaintiff Lubin respectfully asks that this Honorable Court deny Starbucks' Motion to Compel Arbitration.

## SUPPORTING FACTS AND PROCEDURAL OVERVIEW

*The First Lead Plaintiff, Ariel Torres, and the Alight COBRA form used by Starbucks*

1. The first Named Plaintiff, Ariel Torres, filed his original complaint on June 8, 2020, against his former employer, Starbucks, for failing to provide him with a COBRA notice that complies with the law. (Doc. 1).

2. But the allegations as to the deficiencies found in the Starbucks' COBRA form are not unique to this case. The COBRA form utilized by Starbucks is commonly referred to as the "Alight" form. It is a deficient COBRA form provided to many employers by a national COBRA administrator known as "Alight Solutions," a non-party to this lawsuit.

3. In fact, the Alight COBRA form has been subject of many, many federal lawsuits, not the least of which was *Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-00116, 2018 WL 3860217 (M.D. Fla. Aug. 7, 2018), in which Judge Scriven certified a class of approximately 20,000 participants and beneficiaries who received an Alight form nearly identical to the form used by Starbucks here.

4. Two other notable Alight form COBRA-based cases include *Rigney, et al. v. Target Corp.*, M.D. Fla. Case No.: 8:19-cv-01432, (Doc. 50)(certifying Rule 23 class of 92,000 people who received Alight forms similar to the Starbucks COBRA form for settlement purposes), and *Riddle v. PepsiCo, Inc.*, 440 F. Supp. 3d 358, 364 (S.D.N.Y. 2020) (denying motion to dismiss and holding the plaintiffs adequately alleged the Alight notices used by Pepsi, also similar to the Starbucks form, did not satisfy the COBRA election notice requirements).

### *Plaintiff Torres Agrees to Arbitration*

5.  Starbucks filed its first Motion to Compel Arbitration on June 7, 2020. (Doc. 12-2).

6.  In that Motion Starbucks sought to compel arbitration of Torres' claims pursuant to an arbitration Torres was provided when he began working for Starbucks. (Doc. 12-2).

7.  Because Torres worked for Starbucks, and because Starbucks has presented sufficient evidence he was provided with, signed, and agreed to its terms, Plaintiff Torres does not oppose arbitrating his individual claims against Starbucks with one caveat: rather than dismissing his claims, as requested by Starbucks, pursuant to the Eleventh Circuit's decision in *Bender v. A.G. Edward & Sons, Inc.* 971 F.2d 698 (11th Cir. 1992), his claims should be stayed pending completion of arbitration.[1] That leaves only Plaintiff Lubin's claims.

### *Plaintiff Lubin Opposes Arbitration*

8.  The same is <u>not</u> true for the second Named Plaintiff, Raphyr Lubin.

9.  As a result of his wife's termination in February of 2019, Plaintiff Raphyr Lubin experienced a qualifying event as defined by 29 U.S.C. § 1163(2). (Doc. 15, ¶ 41). Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to mail Plaintiff Lubin the deficient COBRA enrollment notice giving rise to his COBRA claims. (Doc. 15, ¶ 42).

10. He was added as a Named Plaintiff to the First Amended Complaint on July 21, 2020. (*See* Doc. 15).

---

[1] In *Bender* the Eleventh Circuit held that "[t]he district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration." 971 F.2d 698, at 699 (11th Cir. 1992); *see also Musnick v. King Motor Co.,* 325 F.3d 1255, 1261 (11th Cir. 2003) ("Accordingly, the decision of the district court to deny King's motion to compel arbitration is reversed and the case is remanded with instructions to grant the motion and stay these proceedings."); *Giraud v. Woof Gang Bakery*, No. 8:17-cv-2442-T-26AEP, 2018 U.S. Dist. LEXIS 74774, at *6 (M.D. Fla. May 3, 2018) ("The claims subject to arbitration are not dismissed but are stayed pending the outcome of the arbitration."); *In re Wiand,* No. 8:10-CV-71-T-17MAP, 2011 U.S. Dist. LEXIS 113212, at *42-43 (M.D. Fla. Sep. 29, 2011) (ordering a stay pending arbitration in lieu of dismissal, holding that "this Court will adhere to the text of the statute and stay these actions").

11. Although his wife, Louisiana Louis, worked for Starbucks, Plaintiff Lubin did not. Thus, he was never provided with a copy of the Starbucks arbitration agreement. (Lubin Decl., ¶¶ 3, 4).

12. Without so much as seeing the agreement prior to the filing of Starbucks' Motion, Plaintiff Lubin could not have possibly agreed to its terms as "it is hornbook law that to be bound one must be a party to a contract, and there is no arbitration exception to this principle of law." *Liberty Commc'ns, Inc. v. MCI Telecommunications Corp.*, 733 So. 2d 571, 574 (Fla. 5th DCA 1999).

13. Because Starbucks and Plaintiff Lubin never came to a meeting of the minds regarding essential terms of the agreement (or, in fact, any terms whatsoever), there is no binding and enforceable contract between them.

14. Moreover, Plaintiff Lubin's COBRA claim did not arise until *after* his wife was terminated and the deficient COBRA notice then mailed to him. (Doc. 15, ¶¶ 41-42). This guts any arguments by Starbucks suggesting his wife's "continued employment" somehow warrants compelling Plaintiff Lubin's claims to arbitration.

15. In sum, Plaintiff Lubin did not work at Starbucks, was not paid by Starbucks, and received no consideration from Starbucks in exchange for his purported agreement to arbitrate his COBRA claims against Starbucks.

16. Plaintiff Lubin is bringing statutory claims challenging the legal sufficiency of Starbucks COBRA notices. As such, Starbucks has no contractual privity with him and also lacks standing by estoppel.

17. Finally, it is worth noting that besides trying to enforce an arbitration agreement against Named Plaintiff Lubin had never seen (much less agreed to), in a footnote Starbucks also takes a surprisingly incongruous position by positing that, "Plaintiffs' claims fail as a matter of law

4

because they failed to exhaust the internal appeal procedure provided in the governing plan documents." (Doc. 18, p. 8, fn. 4).

18. By advancing this argument, Starbucks provides the Court with an alternative reason to deny its Motion to Compel— this time based upon the plain language of its own arbitration agreement.[2]

19. Specifically, the Starbucks arbitration agreement contains a section clearly labeled: "Claims Not Covered by this Agreement," which excludes from coverage by the agreement any "claim for … other benefits under a plan or program that provides its own process for dispute resolution." (*See* Doc. 18-2, p. 19),

20. Put another way, because Starbucks takes the position that Plaintiff Lubin's claims are somehow subject to the "governing plan" (the Starbucks Health Plan), a plan which Starbucks also claims includes an administrative exhaustion requirement, the Starbucks' arbitration agreement by definition excludes Plaintiff Lubin's claims from coverage under the agreement.[3]

21. For the reasons set forth herein, Starbucks's Motion to Compel should be granted as to Plaintiff Torres, pending resolution of his claims through arbitration. But the Starbucks' Motion should be denied as to Plaintiff Lubin's COBRA claims.

## MEMORANDUM OF LAW

**I.    Legal Standard.**

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2009) (*citing Perry v. Thomas*, 482 U.S. 483,

---

[2] Plaintiff Lubin disputes his COBRA claims are subject to the Starbucks arbitration agreement and/or the Starbucks' Health Plan. As such, should Starbucks later raise the Plan's provisions or requirements as a defense, including any purported exhaustion requirement under the Plan, Plaintiff Lubin will dispute application of the same and argue futility as this is not an ERISA benefits case. (*See* Doc. 15, ¶¶ 45 – 47).

107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). While the Federal Arbitration Act ("FAA") codifies a "strong federal preference for arbitration of disputes," *Musnick v. King Motor Co.*, 325 F.3d 1255, 1258 (11th Cir. 2003), Supreme Court and Eleventh Circuit precedent make clear that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not so agreed so to submit.'" *Ivax Corp. v. B. Braun of Am., Inc*., 286 F.3d 1309, 1315 (11th Cir. 2002) (*quoting AT & T Techs., Inc. v. Commc'n*, 475 U.S. 643, 648 (1986)).

Likewise, under Florida law (which applies here), "[o]ne who has not agreed to be bound by an arbitration agreement cannot be compelled to arbitrate." *Liberty Commc'ns, Inc. v. MCI Telecommunications Corp*., 733 So. 2d 571, 573 (Fla. Dist. Ct. App. 1999)." Named Plaintiff Lubin never agreed to submit his COBRA claims against Starbucks to arbitration. Thus, the Court should deny Starbucks' Motion as to his claims.

**II.    Argument.**

Arbitration is a matter of contract. No party, including Plaintiff Lubin here, can be compelled to submit to arbitration any dispute that he has not agreed to submit. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986). As Defendant correctly points out in its brief, in deciding whether to compel arbitration, a court is charged with answering two "gateway" questions in response to a motion to compel arbitration: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83-84 (2002); *Lambert v. Austin Ind.,* 544 F.3d 1192, 1195 (11th Cir. 2008) (same).

Here, the answer to both of these gateway questions is a hard "no." There exists no valid agreement to arbitrate between Plaintiff Lubin and Starbucks under Florida law. Likewise, and also applying Florida law, the agreement between his wife and Starbucks does not cover Plaintiff Lubin's COBRA claims.

### A. No Valid Agreement to Arbitrate Exists Between Plaintiff Lubin and Starbucks.

As a threshold matter, no valid agreement to arbitrate exists between Plaintiff Lubin and Starbucks. Starbucks' Motion does not suggest otherwise. Indeed, basic Florida contract law requires Starbucks prove three elements to demonstrate the existence of valid agreement: "'offer, acceptance, consideration and sufficient specification of essential terms.'" *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)). Starbucks cannot establish one of these elements, much less all three. "The general rule favoring arbitration does not support forcing a party into arbitration when that party did not agree to arbitrate." *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So. 2d 324, 326 (Fla. 4th DCA 1999).

First, Starbucks made no offer to Plaintiff Lubin. Second, Plaintiff Lubin did not accept any offer from Starbucks. (Lubin Decl., ¶¶ 3, 4). Nor did Starbucks provide him with any kind of "consideration and sufficient specification of essential terms." His wife's continued employment cannot possibly constitute such consideration. Her employment ended in February of 2019 before his COBRA claims had even accrued. While the consideration his wife's "continued employment" with Starbucks may have supported the formation of a valid agreement between her and Starbucks, it cannot be bootstrapped into consideration sufficient to support Starbuck's attempt to create a post-hoc arbitration agreement between itself and Plaintiff Lubin. Without a valid agreement to enforce against him, Starbucks cannot compel Plaintiff Lubin's claims to arbitration.

### B. Plaintiff Lubin's Claims Are Not Covered by His Wife's Arbitration Agreement.

Just as no valid agreement exists between Plaintiff Lubin and Starbucks, Plaintiff Lubin's COBRA claims are **not** covered by his wife's arbitration agreement. Rather, the arbitration clause covers only claims brought by Plaintiff Lubin's wife, not him. Florida courts have long held that contractual arbitration is only mandated for controversies or disputes which the parties have agreed

7

to submit to arbitration. *Pacemaker Corp. v. Euster*, 357 So.2d 208 (Fla. 3d DCA 1978); *Painewebber, Inc. v. Hess*, 497 So.2d 1323 (Fla. 3d DCA 1986); *All American Semiconductor, Inc. v. Unisys Corp.*, 637 So.2d 59 (Fla. 3d DCA 1994).

Plaintiff Lubin never agreed to submit any of his claims to arbitration. In fact, the controlling language of the agreement specifically uses "I" and "me" and "my employment", all of which refer exclusively to Plaintiff Lubin's wife, not him. (*See* Doc. 18-2, p. 19). The agreement begins with: "Starbucks and **I** agree to use binding individual arbitration to resolve any "Covered Claims" that arise between **me** and Starbucks…." (*See* Doc. 18-2, p. 19). It goes on to specifically limit "covered claims" as follows: "Covered Claims" are those brought under any statute, local, ordinance, or common law ***relating to my employment*** …." (*See* Doc. 18-2, p. 19). (Emphasis added). Clearly, these references relate exclusively to Plaintiff Lubin's wife, a signatory to the agreement, not him.

It is equally clear that the Starbucks' arbitration agreement covers only disputes between Plaintiff Lubin's wife and Starbucks related to her employment. It has nothing to do with him. He is not party to it, never referred to in it, and not incorporated by reference (something Starbucks could have easily done in the agreement). In fact, "Covered Claims" are specifically defined by the Starbucks' arbitration agreement as follows: " 'Covered Claims' are those brought under any statute, local, ordinance, or common law ***relating to my employment***, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment." (*See* Doc. 18-2, p. 19). (Emphasis added). Simply put, unlike his wife, Plaintiff Lubin did not work at Starbucks, making the agreement wholly inapplicable to his COBRA claims. The "I" and "my employment" refer to his wife, not Plaintiff Lubin.

Expanding further on this point, Plaintiff Lubin is not suing for any element of "compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits,

8

leaves of absence, accommodations, or termination of employment" related in any way, shape, or fashion, to his wife's employment at Starbucks— the only items covered under the agreement. (*See* Doc. 18-2, p. 19). In fact, the Amended Complaint specifically states "Plaintiffs are not making claims for benefits under ERISA," eviscerating Starbucks' arguments that Plaintiff Lubin is somehow making a claim, "…concerning any element of compensation." (*See* Doc. 18, p. 17).

Rather, in the Amended Complaint, Plaintiff Lubin merely seeks to recover statutory damages under 29 U.S.C. § 1132(c)(1) as a result of the legally deficient COBRA notice he received after his wife's job at Starbucks ended, equitable relief, fees, and costs. None of these items are covered by the agreement. Starbucks tries to overcome this hurdle by highlighting what it hopes the Court will treat as a catch-all phrase, specifically "…concerning any element of compensation." (*See* Doc. 18, pp. 17). But this argument by Starbucks stretches the plain language of the agreement beyond any reasonable application in fact or law. It also contradicts the prayer for relief from the Amended Complaint (*see* Doc. 15, pp. 12 – 13), which makes clear Plaintiff Lubin is seeking only equitable relief, statutory damages, fees, and costs. These in no way relate to compensation or benefits earned by his wife while working for Starbucks.

And, as mentioned *supra*, Plaintiff Lubin's wife employment ended in February of 2019. But Starbucks did not mail him the deficient COBRA notice giving rise to his claims in this case until ***after*** her employment ended. (Doc. 41, ¶¶ 41 - 42). Thus, his claims simply have nothing to do with her employment and are not covered by the agreement.

Finally, Starbucks drafted the agreement and the arbitration clause. Under Florida law, the rules of construction require that contracts be construed against the drafter. *Vargas v. Schweitzer-Ramras*, 878 So. 2d 415, 417 (Fla. 4th DCA 2004). If Starbucks wanted to incorporate employee family members, like Plaintiff Lubin, into its arbitration agreements when they were covered under a Starbucks health plan it could easily have done so. It did not. As such, Plaintiff Lubin should not

be grafted into his wife's agreement with Starbucks. Under these facts and Florida law, Plaintiff Lubin should "not be forced into arbitration against [his] will." *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So. 2d 324, 326 (Fla. 4th DCA 1999). The Motion should be denied accordingly.

### C. Florida Law Equitable Estoppel Principles Do Not Apply.

Under Florida law a non-signatory may typically only be bound to arbitrate under five very limited theories: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel. *Johnson v. Pires*, 968 So.2d 700, 701 (Fla. 4th DCA 2007) (*citing Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995)); *see MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). Starbucks' brief argues that equitable estoppel applies here under Florida law. But Plaintiff respectfully submits that Starbucks is wrong.

The theory of equitable estoppel under Florida law may only bind a nonsignatory to arbitration (1) "where a nonsignatory plaintiff sues a signatory defendant, based upon an agreement that contains an arbitration clause between the defendant and a third-party to whom the plaintiff is affiliated," or, (2) where a company's "non-signatory affiliate is compelled to arbitrate." *In re Managed Health Care Litigation*, 132 F.Supp.2d 989, 994-97 (S.D. Fla. 2000) (applying equitable estoppel, agency and third-party beneficiary theories), rev'd on other grounds, *In re Humana, Inc. Managed Care Litigation*, 333 F.3d 1247 (11th Cir. 2003). Additionally, equitable estoppel applies (3) "where a signatory to a written agreement must rely on the terms of the agreement in asserting its claims against the nonsignatory." *Id*. at 995 (*citing MS Dealer Service Corp. v. Franlin*, 177 F.3d 942, 947 (11th Cir. 1999)).

None of these estoppel scenarios remotely apply here. Plaintiff Lubin is not suing Starbucks based on any agreement, much less his wife's agreement with Starbucks. Likewise, there is no Starbucks' non-signatory affiliate being compelled to arbitrate in this case. And Plaintiff Lubin is not relying on any agreement Starbucks and his wife entered into to assert his claims. Further, the

10

Amended Complaint's allegations do not rely in any way on the agreement between his wife and Starbucks. No analysis of his wife's employment, or any agreement she entered into with Starbucks, is remotely necessary to make any determinations regarding the allegations in the Amended Complaint. In other words, Plaintiff Lubin's claims against Starbucks are not founded in, do not arise from, and are not related to his wife. In fact, his claims did not arise until ***after*** she stopped working at Starbucks, and ***after*** he received the deficient COBRA notice from Starbucks.

"In essence, equitable estoppel precludes a party from claiming the benefit of some of the provisions of a contract while simultaneously attempting to avoid the burden that some other provisions of the contract impose." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335 (11th Cir. 2012). By recognizing that the linchpin for the application of equitable estoppel is to prevent unfairness, it becomes clear Starbucks has failed to provide any reason to invoke the doctrine in this case. There is nothing about Plaintiff Lubin's conduct or claims that somehow makes it unfair for him, as a nonparty to any arbitration agreement with Starbucks, to assert his rights in court against Starbucks. *See Drayton v. Toyota Motor Credit Corp.*, No. 3:16-CV-46-J-39JBT, 2016 WL 8928704, at *3 (M.D. Fla. July 11, 2016), report and recommendation adopted, No. 3:16-CV-46-J-39JBT, 2016 WL 8929258 (M.D. Fla. Nov. 10, 2016), *aff'd*, 686 F. App'x 757 (11th Cir. 2017).

In fact, just a few weeks ago the Eleventh Circuit analyzed the equitable estoppel doctrine in *Lavigne v. Herbalife, Ltd.*, No. 18-14048, 2020 WL 4342671, at *5 (11th Cir. July 29, 2020), when it explained that "…in deciding whether equitable estoppel is appropriate, we must remember the purpose of the doctrine, which is to prevent the plaintiff from "hav[ing] it both ways." *Id*. at 543 (*quoting Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)). "[T]he signatory 'cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id*. (*quoting Grigson*, 210 F.3d at 528).

11

Consistent with the *Lavigne* holding, Plaintiff Lubin is <u>not</u> seeking to have it both ways. He is not suing on any agreement he had with Starbucks, or even that his wife had with Starbucks. Rather, he is suing for COBRA violations which occurred after her employment with Starbucks ended. His claims relate exclusively to a deficient COBRA he received, not her, after she left Starbucks' employment. Thus, nothing about his COBRA claims against Starbucks warrant application of the doctrine of equitable estoppel.

### D.     Starbucks' "Third-Party Beneficiary" Arguments Also Fail.

Besides equitable estoppel, Starbucks also argues it is "entitled to enforce the Arbitration Agreement against Lubin under a third-party beneficiary theory" under Florida law. (*See* Doc. 18, p. 17). But Florida law, including Florida Supreme Court precedent, demonstrates otherwise.

In *Mendez v. Hampton Court Nursing Ctr., LLC*, the Florida Supreme Court discussed the law of third-party beneficiaries and when they can be bound by an arbitration agreement. 203 So.3d at 148–50. The *Mendez* Court explained, "The third-party beneficiary doctrine [under Florida law] does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party." *Id*. at 149. Notably, the *Mendez* Court also distinguished previous Florida case law by explaining that a third-party beneficiary cannot sue to enforce a contract and also argue it is not bound by its terms. *Id*. Most importantly, the Florida Supreme Court held that a third-party beneficiary who does not sue to enforce the contract is not bound by the terms to which she did not agree. *Id*.

Going further, the *Mendez* Court also draws a careful distinction between claims to enforce a contract and claims for other violations. In *Mendez*, the plaintiff was a nursing home resident whose son entered into an agreement with the nursing home for his father's care. *Id*. at 147. The plaintiff later sued the nursing home for negligence and statutory violations after the plaintiff's eye was removed because of an infection. *Id*. at 147–48. The *Mendez* Court held that the plaintiff's

12

claims for negligence and statutory violations were not premised upon the contract signed between the nursing home and his son. *Id*. at 149.

So whether Plaintiff Lubin—as a husband of a former Starbucks employee—is bound by the arbitration agreement depends on whether his claims are somehow premised on his wife's agreement with Starbucks. Clearly, they are not. His claims are not premised on the agreement between Starbucks and his wife, nor are they in any way related to his wife's employment. Rather, his claims are premised on a deficient COBRA notice he received after his wife no longer worked for Starbucks. Under these facts, Plaintiff Lubin is clearly ***not*** bound to arbitrate under Florida law. And tracking the Florida Supreme Court's decision in *Mendez*, because Plaintiff Lubin's claims for violation of COBRA are not claims to enforce the agreement between his wife and Starbucks, under *Mendez* his COBRA claims cannot bind him to the arbitration provision in his wife's agreement with Starbucks. *See Ray v. NPRTO Fla., LLC*, 322 F. Supp. 3d 1261, 1263 (M.D. Fla. 2017), *aff'd*, 743 F. App'x 955 (11th Cir. 2018) (denying motion to compel arbitration under similar third-party beneficiary theory).

### E.   Application of the FAA.

The same result is reached when looking to and applying federal law and the FAA. The FAA, while designed to place arbitration agreements "on the same footing as other contracts," *Waffle House, Inc.*, 122 S.Ct. at 761 (*quoting Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991)), nevertheless, "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Of course, "courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Paladino*, 134 F.3d at 1057 (*quoting Goldberg v. Bear, Stearns & Co*., 912 F.2d 1418, 1419–20 (11th Cir.1990));

Similar to the legal standard under Florida law, to compel arbitration under the FAA, Starbucks must also establish that: 1) a written agreement to arbitrate exists; 2) a nexus to interstate commerce exists; and 3) the arbitration clause covers the claims. *KWEST Commc'ns, Inc. v. United Cellular Wireless Inc.*, No. 16-20242-CIV, 2016 WL 10859787, at *5 (S.D. Fla. Apr. 7, 2016), *report and recommendation adopted*, No. 16-20242-CIV, 2016 WL 10870449 (S.D. Fla. June 28, 2016).

As stated above, Starbucks has failed to establish a written agreement to arbitrate exists between it and Plaintiff Lubin. And, Starbucks has failed to demonstrate the arbitration clause at issue covers Plaintiff Lubin's COBRA claims. For the sake of brevity, Plaintiff Lubin will not re-hash his arguments on those discrete issues here. Instead, he asks they be incorporated by reference.

### F.  If Starbucks' Plan-Exhaustion Arguments Apply, Plaintiff Lubin's Claims Are Specifically Excluded From the Agreement.

Although Plaintiff Lubin disputes the Starbucks Health Plan applies to his COBRA claims, as the movant Starbucks should not be permitted to compel arbitration of Plaintiff Lubin's claims that its own arbitration agreement specifically excludes from coverage.[4]

Specifically, the Starbucks arbitration agreement (*see* Doc. 18-2, p. 19), contains a section clearly labeled "Claims Not Covered by this Agreement", which excludes from the agreement any "claim for … other benefits under a plan or program that provides its own process for dispute resolution." Because Starbucks takes the position that Plaintiff Lubin is subject to the "governing plan" (meaning the Starbucks' health plan), which has its own dispute resolution process, the plain

---

[4] *Compare* Doc. 18-2, p. 19, (excluding from coverage under the Starbucks agreement any "claim for … other benefits under a plan or program that provides its own process for dispute resolution."), *with* Doc. 18, p. 8, fn. 4 ("In addition, Plaintiffs' claims fail as a matter of law because they failed to exhaust the internal appeal procedure provided in the governing plan documents. Starbucks reserves its right to assert failure to exhaust appeal procedures (as well as other defenses) should this matter proceed in this Court. Notably, the governing plan documents also confirm the intention that COBRA notice lawsuits such as the instant matter were intended to proceed solely in an arbitration setting.").

14

language of the Starbucks' arbitration agreement specifically excludes Plaintiff Lubin's claims from being forced to arbitration. This also warrants denial of Starbucks' Motion as to Plaintiff Lubin.

### G. The Court Should Reject Starbucks' Delegation Clause Arguments.

Starbucks also posits that "Plaintiffs should also be immediately compelled to arbitration on the additional ground that the Arbitration Agreement contains a delegation clause delegating all gateway issues to the arbitrator." (Doc. 18, fn. 8). But, again, Plaintiff Lubin respectfully submits Starbucks is wrong. In fact, Starbucks recently lost this very argument in *Wilson v. Starbucks Corp.*, 385 F. Supp. 3d 557, 562 (E.D. Ky. 2019). Notably, the arbitration agreement and delegation clause from *Wilson* are identical to those Starbucks seeks to enforce here.[5] The only difference is that unlike in the plaintiff in the *Wilson* case, who actually worked for Starbucks and was party to the arbitration agreement, Plaintiff Lubin is not a signatory to the arbitration agreement Starbucks seeks to enforce against him.

Initially, as the *Wilson* court pointed out, "the delegation provision in the Starbucks employment contract appears to require submission of questions or applicability and enforceability of the arbitration provision to the arbitrator. But 'courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.' " *Wilson v. Starbucks Corp.*, 385 F. Supp. 3d 557, 562 (E.D. Ky. 2019) (citing to and quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 531 (2019). Here, later contractual provisions undermine the delegation of applicability and enforceability issues to the arbitrator. The arbitration agreement expressly excludes "(c) actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement." *Id.* In this context, the word "action" is best understood as a civil judicial proceeding. *See Action*, BLACK'S LAW DICTIONARY (11th ed.

---

[5] *Compare Wilson v. Starbucks Corp.,* (E.D. Ky. Case: 5:19-cv-00087-JMH)(Doc. 6-1, pp. 15-17) *with* Doc. 18-2, pp. 19-21).

2019) (defining "action" as "a civil or criminal judicial proceeding."). Thus, the arbitration agreement expressly excludes "[a civil] action[ ] to enforce this [arbitration] Agreement" or a civil action to "compel arbitration" from claims covered by the arbitration agreement.

The Court in *Wilson* determined that the Starbucks' delegation clause and the exclusion clause contradict one another and create ambiguity pertaining to whether the parties agreed to submit initial questions of arbitrability, including questions of applicability and enforceability of the arbitration clause, to the arbitrator. *Wilson*, 385 F. Supp. 3d at 562. On one hand, the Starbucks' delegation clause provides that the parties agreed to delegate threshold questions of arbitrability to the arbitrator. *Id.* But, on the other hand, the Starbucks' claim exclusion provision expressly excludes actions to enforce the arbitration agreement and actions to compel arbitration. *Id.* This inconsistency creates confusion about the intention of the parties at the time of contracting. *Id.*

"Since the arbitration agreement fails to provide clear and unmistakable evidence that the parties intended to arbitrate questions of enforceability or applicability of the arbitration provision in the context of a motion to compel arbitration, the Court [should] not assume that the parties intended to submit initials questions about arbitrability to the arbitrator." *Id.* (citing and quoting *Henry Schein*, 139 S.Ct. at 531. As a result, in this action to compel arbitration, just as in *Wilson*, the Court should also decide initial questions pertaining to the enforceability and applicability of the arbitration provision. For these reasons, this Honorable Court should reject Starbucks' delegation arguments just as the *Wilson* court did.

**H.     Class Action Allegations.**

Finally, Starbucks' takes a parting shot at Plaintiff Lubin's Amended Complaint by arguing that the class action allegations are somehow improper. (Doc. 18, p. 18). But, for all of the reasons stated above, Plaintiff Lubin is not subject to the agreement his wife entered into with Starbucks. Thus, it also follows he is also not subject to the class action waiver.

16

### I.     Conclusion.

Based upon the foregoing reasons, Starbucks's Motion to Compel should be granted as to Plaintiff Torres, pending resolution of his claims through arbitration. But the Starbucks' Motion should be denied as to Plaintiff Lubin's COBRA claims.

Dated this 25th day of August, 2020.

                                              Respectfully submitted,

                                              */s/Brandon J. Hill*
                                              **LUIS A. CABASSA**
                                              Florida Bar Number: 053643
                                              Direct No.: 813-379-2565
                                              **BRANDON J. HILL**
                                              Florida Bar Number: 37061
                                              Direct No.: 813-337-7992
                                              **WENZEL FENTON CABASSA, P.A.**
                                              1110 North Florida Ave., Suite 300
                                              Tampa, Florida 33602
                                              Main No.: 813-224-0431
                                              Facsimile: 813-229-8712
                                              Email: lcabassa@wfclaw.com
                                              Email: bhill@wfclaw.com
                                              ***Attorneys for Plaintiffs***

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                              */s/ Brandon J. Hill*
                                              **BRANDON J. HILL**