UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARIEL TORRES and RAPHYR LUBIN,

    Plaintiffs,

v.                                        Case No: 8:20-cv-1311-CEH-TGW

STARBUCKS CORPORATION,

    Defendant.
_____/

## ORDER

This matter comes before the Court upon Defendant's Second Motion and Incorporated Memorandum of Law to Compel Arbitration of Plaintiffs' Individual Claims and Dismiss Plaintiffs' Class Action Claim [Doc. 18], Plaintiff's Response [Doc. 23], Defendant's Supplemental Brief [Doc. 27], Plaintiff's Reply to Defendant's Supplemental Brief [Doc. 28], and the Notice of Filing of Supplemental Authority in Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration [Doc. 29]. In the motion, Defendant Starbucks Corporation[1] states that the action directly violates enforceable arbitration agreements that are governed by the Federal Arbitration Act ("FAA") and require Plaintiffs to arbitrate individually their claims, which arise from an employee health benefit plan provided by Defendant. [Doc. 18 at

---

[1] Plaintiffs have named "Starbucks Corporation," rather than "Starbucks Coffee Company," as the Defendant in this case based on their determination that the former is actually the Plan Administrator. [Doc. 15 at p. 1 n.1]. Defendant, however, identifies itself as Starbucks Coffee Company. [Doc. 18 at p. 1].

p. 1]. Plaintiff Ariel Torres consents to arbitration while Plaintiff Raphyr Lubin opposes the motion to compel arbitration. [Doc, 23 at p. 1]. The Court, having considered the motion and being fully advised in the premises, will grant-in-part and deny-in-part Defendant's Second Motion and Incorporated Memorandum of Law to Compel Arbitration of Plaintiffs' Individual Claims and Dismiss Plaintiffs' Class Action Claim.

I.  BACKGROUND

*Facts*

This is an action for statutory damages and injunctive relief arising from Defendant's alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide Plaintiffs with a COBRA notice that complies with the law. [Doc. 15 at p. 1]. "COBRA requires the plan sponsor of each group health plan . . . to provide 'each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan.' " *Id.* ¶ 21 (quoting 29 U.S.C. § 1161). That notice must comply with the regulations prescribed by the Secretary of Labor. *Id.* ¶ 25 (quoting 29 U.S.C. § 1166(a)).

Plaintiff Torres is a former employee of Defendant and was a participant in the Starbucks Health Plan. *Id.* ¶ 34. Torres's employment was terminated on March 23, 2020. *Id.* ¶ 35. Plaintiff Lubin's wife was employed by Defendant and Plaintiff Lubin was covered by the Starbucks Health Plan until his wife was terminated in February

2019. *Id.* ¶¶ 39, 40, 41. Both Torres and Lubin received a COBRA enrollment notice from Defendant's COBRA Administrator, Alight Solutions. *Id.* ¶¶ 38, 42, 42. The notice provided by Alight was allegedly deficient and violated 29 C.F.R. § 2590.606-4, the regulations prescribed by the Department of Labor. *Id.* ¶ 30. Among other deficiencies, the notice to Plaintiffs failed to explain how to enroll in COBRA and were not accompanied by a physical election form; failed to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits; failed to provide the name of the plan; and failed to provide the address to which payments should be sent. *Id.* The deficient notice confused Plaintiffs and resulted in their inability to make an informed decision as to electing COBRA continuation coverage. *Id.* ¶ 31. A separate letter containing additional information was subsequently provided to Plaintiffs, but it did not contain some of the information missing from the enrollment notice. *Id.* ¶ 32. Because of the deficiencies, Plaintiffs did not understand the enrollment notice and were unable to elect COBRA. *Id.* ¶ 33.

*The Lawsuit*

The action was originally filed by Torres, as a class action, on June 8, 2020. [Doc. 1]. The following month, the complaint was amended to add Lubin as a plaintiff. [Doc. 15]. It asserts one claim for violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4. *Id.* ¶¶ 64-71. Plaintiffs allege that Defendant's notice did not comport with the Department of Labor model notice and confused and misled them. *Id.* ¶ 4. This caused Plaintiffs informational injuries because they did not receive all the information

3

to which they were entitled by law under COBRA and economic injuries in the form of lost insurance, higher insurance premiums, and unpaid medical bills. *Id.* ¶¶ 4, 5. In fact, they alleged that the action was also brought on behalf of "[a]ll participants and beneficiaries in the Starbucks Health Plan who were sent a COBRA notice in the form provided to Plaintiffs . . . who did not elect continuation coverage, and who did not sign or opted out of the Starbucks arbitration agreement." *Id.* ¶ 56.

*Arguments on the Motion to Compel Arbitration*

Defendant filed this motion to compel arbitration, alleging that Plaintiffs are required to individually arbitrate their claims which arise from the employee health benefit plan provided by Defendant. [Doc. 18 at p. 1]. Defendant argues that both Torres and Lubin's wife accepted the arbitration agreement as a condition of employment and that Lubin is a third-party beneficiary of the agreement, such that both Torres and Lubin are bound to arbitrate. *Id.* at pp. 3-7, 17-18. The arbitration agreement stated as follows:

> Starbucks and I agree to use binding individual arbitration to resolve any "Covered Claims" …. "Covered Claims" are those brought under any statute…relating to my employment, including those concerning any element of compensation … or termination of my employment.
>
> **Except as provided herein, I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Starbucks and I waive the right to a trial before a judge or jury in federal or state court.** The Arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law.

4

[Doc. 18-2 at p. 19]. Defendant further argues that the arbitration agreement is valid and covers Plaintiffs' claims. [Doc. 18 at pp. 10-15]. Additionally, Defendant argues that principles of equitable estoppel warrant enforcement of the agreement against Lubin. *Id.* at pp. 15-17.

Torres consents to arbitration of his COBRA claims. [Doc. 23 at pp. 1, 3 ¶ 7]. However, Lubin contends at length that he is not a party to the agreement and has never agreed to arbitrate his COBRA claims. *Id.* at pp 1-2, 4 ¶¶ 12-13, 15-16. In fact, he contends that the agreement between his wife and Defendant does not cover his COBRA claims. *Id.* at p. 6-10. He further explains that equitable estoppel does not apply to him as he is not suing based on the agreement between his wife and Defendant. *Id.* at pp. 10-12. Lubin also argues that he cannot be bound by the agreement as a third-party beneficiary as Florida law does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party and also because his claims are not premised on the agreement, but on a deficient COBRA notice. *Id*. at pp. 12-13.

In its supplemental brief, Defendant again raises estoppel and third-party beneficiary theories of contract as bases to compel non-signatories of an agreement to arbitration. [Doc. 27 at p. 3]. Defendant presents various explanations as to why estoppel compels arbitration, including that "[e]stoppel does not require contract language to directly mention a nonsignatory's claims" and that "what matters is whether the nonsignatory plaintiff's claim 'is directly related to, if not congruent with, those of a signatory.' " *Id.* at pp. 3-5. Next, Defendant takes the position that Lubin is

5

seeking to invoke the benefits of the agreement containing the arbitration requirement and is therefore bound to arbitrate under a third-party beneficiary theory. *Id.* at pp. 5-6. Additionally, Defendant argues that Lubin's claim is derivate of his wife's employment and related benefits including claims relating to COBRA notices. *Id.* at p. 6.

In turn, Lubin contends that he is not suing Defendant based on any agreement, much less his wife's agreement with Starbucks, and that "[n]o analysis of his wife's employment, or any agreement she entered into with [Defendant], is needed to make any determinations regarding the allegations in the Amended Complaint." [Doc. 28 at p. 4. Additionally, Lubin again explains that there is no merit to the third-party beneficiary argument because "a third-party beneficiary who does not sue to enforce the contract is not bound by the terms to which []he did not agree." *Id.* at p. 5. In fact, he explains that "whether [he] is bound by the arbitration agreement depends on whether his claims are somehow premised on his wife's agreement with Starbucks," which "they are not." *Id.* at p. 6. Instead, his claims are premised on a deficient COBRA notice and his independent statutory rights under 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4. *Id.* at p. 6. Lubin submitted supplemental authority in support of his argument. [Doc. 29].

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, codifies a "liberal federal policy favoring arbitration" and requires the courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

6

U.S. 614, 625–26 (1985) (internal quotation marks omitted). The "principal purpose" of the FAA is to ensure "that private arbitration agreements are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Three sections of the FAA "play particularly important roles" in the FAA's purpose of overcoming judicial resistance to arbitration and declaring a national policy in favor of arbitration for claims that parties contract to settle in such a manner. *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1345 (11th Cir. 2017). Section 2 of the FAA "makes arbitration agreements 'valid, irrevocable, and enforceable' as written (subject, of course, to [its] saving clause)."[2] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting 9 U.S.C. § 2). "The FAA thereby places arbitration agreements 'on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "Like other contracts . . . they may be invalidated by 'generally applicable contract defenses, such

---

[2] In its entirety, Section 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

7

as fraud, duress, or unconscionability.' " *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The Eleventh Circuit has held that arbitration agreements satisfy the "involving commerce" requirement under Section 2 where a defendant-employer's "overall employment practices affect commerce." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1370 (11th Cir. 2005).

Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *Id.* (quoting 9 U.S.C. § 3). Additionally, Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Significantly, Section 4 also provides that the court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* However, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.*

The Court must engage in a two-step inquiry in analyzing a motion to compel arbitration: first, the Court must determine if the parties agreed to arbitrate the dispute; and second, the Court must decide whether "legal constraints external to the parties' agreement foreclosed arbitration." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

## III. DISCUSSION

Defendant argues that pursuant to the FAA, the Court must compel arbitration "in accordance with the terms of the agreement." [Doc. 18 at p. 9 (citing 9 U.S.C. § 40]. However, Lubin is not a party to any arbitration agreement with Defendant. Absent an agreement to arbitrate, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)). "[A]s a matter of federal law, arbitration is a matter of consent, not coercion." *Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) (quotation omitted); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008) ("[A]rbitration is a creature of contract; a party may not be compelled to arbitrate if he did not agree to do so."). In light of these principles and the lack of agreement between Defendant and Lubin, Defendant attempts to apply the agreement to Lubin based on principles of estoppel and based on Lubin's standing as a third-party beneficiary of the agreement—having

9

received insurance through his wife's employment with Defendant. The Court will address each respectively.[3]

## Equitable Estoppel

"[E]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012). Under Florida's doctrine of equitable estoppel, "a defendant who is a non-signatory to an agreement containing an arbitration clause can force arbitration of a signatory's claims when 'the signatory … must rely on the terms of the written agreement in asserting its claims against the nonsignatory….' " *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017); *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1256 (11th Cir. 2011). Florida and federal courts have consistently recognized a non-signatory's ability to enforce an arbitration agreement against a signatory to the agreement based on principles of equitable estoppel. *See, e.g.*, *Greene v. Johnson*, 276 So. 3d 527, 530–31 (Fla. 3d DCA 2019); *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 767 (Fla. 1st DCA 2018); *Sawgrass Ford, Inc. v. Vargas*, 214 So. 3d 691, 693 (Fla. 4th DCA 2017); *Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263, 264 (11th Cir. 2015).

A non-signatory could also be bound to an arbitration agreement based on estoppel. *Johnson v. Pires*, 968 So. 2d 700, 702 (Fla. 4th DCA 2007). In seeking to

---

[3] The parties agree that Florida law applies to the contract issues presented to the Court. [Doc. 18 at pp. 15, 17; Doc. 23 at pp. 10, 12].

compel a non-signatory plaintiff to arbitrate, the signatory "must show both that the plaintiff is relying on a contract to assert its claims and that the scope of the arbitration clause in that contract covers the dispute." *Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018). In *Leidel*, the Court determined that arbitration of the plaintiff's claim was not proper as the plaintiff was not relying on a contract to assert his claims and the scope of the arbitration agreement in the contract did not cover the dispute. *Id.* at 888. The court reasoned that the plaintiff's claims relied on obligations allegedly imposed by law and in recognition of public policy and bore no significant relationship to the agreement. *Id.*

The Court agrees with Lubin that he is not "suing [Defendant] based on any agreement, much less his wife's agreement with [Defendant]." [Doc. 23 at p. 10]. The complaint alleges that the COBRA notice provided to Lubin was deficient—as it failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4—and caused Lubin "economic injuries in the form of lost insurance, higher insurance premiums, and unpaid medical bills." [Doc. 15 ¶¶ 4, 5, 30-33, 50, et. seq.]. Lubin's claims are grounded in his statutory right to be notified of the right to continued healthcare coverage after the termination of his wife's employment with Defendant. *Id.* ¶¶ 20-29. Pursuant to § 1166(a)(4), "the administrator shall notify in the event of a qualifying event . . . any qualifying beneficiary . . . of such beneficiary's rights under this subsection." Section 1166(a) further provides that "[n]otice must be provided in accordance with the regulations prescribed by the Secretary." *DeBene v. BayCare Health Sys., Inc.*, 688 F. App'x 831, 839 (11th Cir. 2017). It is therefore clear that as a

11

"qualifying beneficiary," Lubin's claims are based not on the employment contract between his wife and Defendant, but on his own rights. Defendant therefore fails to show that Lubin is relying on the contract with his wife to establish his claims. Even though it appears that the scope of the arbitration agreement in the contract covers the dispute here,[4] the Court cannot compel Lubin to arbitration, in light of the fact that Lubin is not seeking to enforce any contractual right. As such, Defendant's effort to compel arbitration based on the doctrine of equitable estoppel fails.

*Third-party Beneficiary*

Defendant also argues that Lubin should be compelled to arbitrate his claims against it based on Lubin's status as a third-party beneficiary of his wife's contract with Defendant. "Critically, the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around." *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 149 (Fla. 2016) (citing *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner,* 612 So.2d 1378, 1380 (Fla.1993) and *Shingleton v. Bussey,* 223 So.2d 713, 715 (Fla.1969)). Florida courts will not enforce an arbitration against a third-party who does not bring suit as a third-party beneficiary for the benefit of a contract signed by others. *Id.* at p. 149. Similar to the

---

[4] The arbitration agreement covers claims "brought under any statute . . . relating to [Lubin's wife's employment], including those concerning . . . termination of [her] employment." [Doc. 18-1 at p. 15]. The claims raised herein are brought pursuant to 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 and they concern statutory rights triggered by the termination of Lubin's wife's employment with Defendant. The termination of employment is the qualifying event that gave rise to the statutory rights Lubin now seeks to enforce. The Court agrees that the claims raised herein are within the scope of the agreement.

case here, the defendant nursing home in *Mendez* sought to enforce against plaintiff father, an arbitration clause in the contract between the nursing home and plaintiff's son. *Id.* at 147. The Florida Supreme Court held the father was not bound by the arbitration clause where his estate sued for negligence and statutory violations—not to enforce the son's contract with the nursing home. *Id.* at 149. As in *Mendez*, Lubin is not suing to enforce his wife's contract with Defendant. This compels the same result the supreme court reached in that case, that Lubin—a third party beneficiary—is not bound by the arbitration provision contained in the contract between Defendant and his wife. "The third-party beneficiary doctrine does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party. *Id.* Defendant therefore cannot compel Lubin to arbitrate this case as a third-party beneficiary of the contract with Lubin's wife.

*Claim is Derivative*

In its supplemental brief in support of the motion to compel arbitration, Defendant argues, for the very first time, that Lubin's claims should be arbitrated because they are derivative of his wife's claims. [Doc. 27 at pp. 2-6]. Lubin contends that the Court may refuse to consider this argument as it was raised for the first time in a reply brief. [Doc. 28 at p. 5]. The Court agrees. Generally, arguments raised for the first time in a reply brief are not properly presented to the Court. *See Vinson v. Koch Foods of Alabama, LLC*, 735 F. App'x 978, 982 (11th Cir. 2018) ("He raised this argument for the first time in his reply brief in support of his motion for summary judgment. Thus, he waived the argument."); *Stubbs v. Wyndham Nassau Resort & Crystal*

13

*Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006) ("While WHC for the first time, in its reply memorandum added an argument pertaining to the district court's ability to assert personal jurisdiction over it, this issue has never been raised in the requisite "motion under [Fed. R. Civ. P. 12] nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a)." We do not find that a mention in a reply memorandum suffices to raise the issue of personal jurisdiction."). Regardless, Defendant's argument that the claim is derivative lacks merit. As Lubin notes in the reply, he seeks only to enforce his own statutory rights under 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4. [Doc. 28 at p. 5]. Because Lubin is a "qualified beneficiary" entitled to the prescribed notice, his claims are not derivative of his wife's.

## IV. CONCLUSION

Plaintiff Lubin is not seeking to enforce the contract between his wife and Defendant. Instead, his claims are premised on his own statutory rights pursuant to 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4. Therefore, Defendant cannot compel Lubin to arbitrate the claims raised in this lawsuit, either based on equitable estoppel or as a third-party beneficiary. Accordingly, it is hereby

**ORDERED**:

1. Defendant's Second Motion and Incorporated Memorandum of Law to Compel Arbitration of Plaintiffs' Individual Claims and Dismiss Plaintiffs' Class Action Claim [Doc. 18] is **granted-in-part** and **denied-**

    **in-part.** The motion is granted as to Plaintiff Ariel Torres and denied as to Plaintiff Raphyr Lubin.

2. Plaintiff Ariel Torres and Defendant Starbucks Corporation shall submit Torres' claims against Defendant to arbitration in accordance with their agreement. The claims between Torres and Defendant are stayed pending the completion of arbitration. Plaintiff Torres and Defendant shall file a notice informing the Court that the arbitration has been concluded, or that their dispute has otherwise been resolved, within fourteen (14) days of either of such event.

3. The claims between Raphyr Lubin and Defendant are not stayed and shall proceed in this case. Lubin and Defendant shall file a case management report no later than March 29, 2021, using the Court's uniform case management report form, which is located under "Forms" at the following hyperlink: https://www.flmd.uscourts.gov/judges/charlene-honeywell. Any conferral for the purpose of preparing this case management report may be conducted telephonically or by video conference.

    **DONE AND ORDERED** in Tampa, Florida on March 15, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:

Counsel of Record and Unrepresented Parties, if any